IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA                           14-CR-6149EAW

             -vs-                          **<u>GOVERNMENT'S RESPONSE
                                                   IN OPPOSITION TO
WILLIE HARRIS,                                     DEFENDANT'S OMNIBUS
                                                   MOTION FOR RELIEF</u>**

              Defendant.

_____

The United States of America, through its attorney, William J. Hochul, Jr., United

States Attorney for the Western District of New York, Charles E. Moynihan, Assistant

United States Attorney, of counsel, does hereby make and file its response to the defendant's

notice of motion and affirmation, all filed November 17, 2014.


<u>**FACTS**</u>


On June 10, 2014, Federal Bureau of Investigation ("FBI") Task Force Officer

("TFO") Brian Tucker and FBI Special Agent Barry Couch interviewed Willie Harris, the

defendant, outside his residence which is located at 49 Troup Street, Apartment 21,

Rochester, New York, as part of an investigation into the defendant's alleged involvement in

the sex trafficking of a minor.   After discussions of the sex trafficking allegations took place,

the defendant was informed that the FBI had a federal search warrant for his residence.   The

defendant was then asked if there was a gun in his residence.   He responded, "I'm not going

to lie" and admitted that he had a gun in his residence.   He described it as, "a sawed off rifle,

a sawed off little thing."   Agents also asked the defendant if drugs were in his residence and

he answered affirmatively.   TFO Tucker asked the defendant if it was "weed" and the defendant said, "No, crack.   Just a few bags."   TFO Tucker then said, "So you are selling? What, just to friends?"   The defendant responded, "Yes, to make a little money, yeah."   He also said, "I got to put a little money in my pocket."

A few minutes later, the FBI executed the search warrant at the location.   During the execution of the search warrant, law enforcement seized, among other things, four small plastic bags containing what appeared to be crack cocaine, additional packaging materials used to package controlled substances for distribution, a digital scale, a sawed off shotgun with serial number P775429, as well as six shotgun shells.   Law enforcement also seized a cellular telephone from the defendant.

Later that same day, June 10, 2014, TFO Tucker and Special Agent Couch interviewed the defendant again at the Rochester Police Department.   TFO Tucker administered the defendant his Miranda rights, which the defendant acknowledged he understood and agreed to waive.   During the interview, law enforcement asked the defendant about the gun, his drug sales and the incident with the minor.   The defendant made several admissions during the interview which, among other things, related to the firearm, the suspected controlled substances and the drug paraphernalia located at his residence.   TFO Tucker prepared a written statement based upon the information provided by the defendant.   TFO Tucker asked the defendant to read the first line and then TFO Tucker read aloud the remainder to the defendant.   The defendant then signed the statement.

In the written statement and in the verbal statements he had earlier made to TFO Tucker and Special Agent Couch, the defendant admitted, in pertinent part and in sum and substance, that there was a "sawed off rifle" in the 49 Troup Street, Apartment 21, Rochester, New York, residence.   He further admitted to selling crack cocaine to "buy clothes and put some money in my pocket."   The defendant also stated that he, "had like 3 bags of crask [sic] and about $200.00" in his apartment.   The defendant also stated, "This morning I was going to buy another 8 ball and get bags to package it up."   The defendant denied the firearm which officers located in the residence belonged to him.   He said that the firearm belonged to his nephew and that his nephew brought it to the defendant 'last week and asked me to hold it.   I left it wrapped up with the shells in a plastic tub in my main room.   I have never fired that gun and I have only had it at my house for about a week.   Last night "Little D" called me and said he was coming over to get it because he was going to "juke" someone, but he never showed up.   I know it was wrong to have it but I was just holding it for him.'

Later that same day, June 10, 2014, Rochester Police Department Investigator Ruben Padilla examined the suspected controlled substance from one of the small plastic bags referred to above.   Investigator Padilla conducted a Cocaine Salts and Base Reagent Field Test upon the substance and received a positive indication for the presence of cocaine.   The Monroe County Crime Laboratory examined the suspected cocaine base on or about September 10, 2014, and concluded that cocaine was present in the tested samples.

Bureau of Alcohol, Tobacco, Firearms, and Explosives Special Agent Ryan Szwejbka, an expert on the origin of manufacture for firearms, reviewed the description of the seized firearm and ammunition and determined that these items were manufactured outside of the State of New York and, therefore, would have traveled in interstate commerce.

The Monroe County Crime Laboratory examined the firearm and ammunition and concluded that the firearm is in working order.   The Monroe County Crime Laboratory examined the dimensions of the firearm and found the shotgun's barrel length to be 16 and 1/8 inches with an overall length of 26 and 5/8 inches.   Law enforcement conducted an inquiry in the National Firearms Registration and Transfer Record ("Record") and found that the firearm is not registered in the Record.    Further, the defendant is not registered in the Record as being lawfully permitted to possess this firearm.

A review of the defendant's criminal history shows that he was convicted in Monroe County Court, Monroe County, New York, of Robbery in the 3rd Degree, in violation of New York State Penal Law section 160.05, a Class D Felony, on or about April 7, 1993, and was sentenced to a term of imprisonment of one year.   A review of the defendant's criminal history shows that he was also convicted in Monroe County Court, Monroe County, New York, of Attempted Burglary in the 2nd Degree, in violation of New York State Penal Law section 140.25, a Class D Felony, on or about August 28, 1995, and was sentenced to a term of imprisonment of between two and four years.   A review of the defendant's criminal history shows that he was also convicted in Supreme Court, Monroe County, New York, of

4

Criminal Sale of a Controlled Substance in the 3rd Degree, in violation of New York State Penal Law section 220.39(1), a Class B Felony, on or about May 1, 2003, and was sentenced to a term of imprisonment of between fifty-four months to nine years.

As a result of the above, on September 17, 2014, a federal grand jury charged the defendant in a multiple count Indictment with violating Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (possession of cocaine with intent to distribute), Title 21, United States Code, Sections 856(a)(1) (maintaining a premises for the purposes of manufacturing, distributing and using a controlled substance), Title 18, United States Code, Section 922(g)(1) (felon in possession of a firearm and ammunition), Title 26, United States Code, Section 5861(c) (possession of a short-barreled shotgun) and Title 26, United States Code, Section 5861(d) (possession of an unregistered short-barreled shotgun).   The Indictment also alleged a forfeiture allegation.

## DISMISSAL OF COUNTS 2 AND 4

The defendant asks for the Court to dismiss Counts 2 and 4 of the Indictment, arguing that these two counts are multiplicitous with other counts contained within the Indictment. The government opposes this motion.

"An indictment is multiplicitous when it charges a single offense . . . multiple times, in separate counts, when in law and fact, only one crime has been committed."   United States

5

v. Chacko, 169 F.3d 140, 145 (2d Cir. 1999).   In order to ascertain whether separate counts of an indictment are multiplicitous, a reviewing count must apply the test established by the Supreme Court in Blockberger v. United States, 284 U.S. 299 (1932).   "Under Blockberger, we determine 'whether there are two offenses or only one [by] whether each provision requires proof of a fact which others do not.'"   United States v. Gore, 154 F.3d 34, 44 quoting Blockberger, 284 U.S. at 304.

In the instant case, the Court should deny the defendant's motion.   As to the motion regarding Count 2 of the Indictment, Count 2 requires proof of separate and discrete elements separate and apart from Count 1.   Specifically, Count 1 requires proof that the defendant knowingly possessed a controlled substance with intent to distribute it.   See 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).   Count 2 requires proof that the defendant knowingly, intentionally and unlawfully used and maintained a premises for the purpose of manufacturing, distributing and using a controlled substance.   See 21 U.S.C. § 856(a)(1).

Likewise, Count 4 requires proof of separate and discrete elements from that of Count 5.   Count 4 requires proof that the defendant knowingly possessed a short-barreled shotgun, with a barrel length of less than 18 inches, which was made in violation of Chapter 53 of Title 26 of the United States Code.   See 26 U.S.C. §§ 5822, 5845(a), 5861(c) and 5871.   Count 5 requires proof that the defendant knowingly possessed a firearm, specifically a short-barreled shotgun with a barrel length of less than 18 inches, which was not registered to him in the

National Firearms Registration and Transfer Record.   See 26 U.S.C. §§ 5841, 5845(a), 5861(d) and 5871.


As such, the Court should deny the defendant's motion.


## SUPPRESSION OF TANGIBLE EVIDENCE


**Failure to Provide Sworn Statements Creating an Issue of Fact**


The Court should decline to suppress the physical evidence in this case because the defendant has failed to provide a sworn statement alleging that a right has been violated.   A defendant is entitled to a suppression hearing when he first alleges that a right has been violated.   United States v. Edelson, 83 F.2d 404 (2d Cir. 1936).   The moving party must state facts based upon personal knowledge that give rise to an issue of fact.     United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967).   Affidavits on the part of the attorney representing a party are insufficient to warrant hearings unless they are able to allege facts based upon personal knowledge.   Id.   In this case, the Court should deny the defendant's request for a suppression hearing surrounding the tangible evidence seized.   The defendant's omnibus motion is not accompanied by a sworn affidavit stating facts based upon personal knowledge sufficient to give rise to an issue of fact warranting a hearing.

**The Defendant Has Yet to Sufficiently Allege Standing**

Defendants seeking to invoke the exclusionary rule must first show that illegal conduct has been committed.  United States v. Padilla, 508 U.S. 77, 81 (1993).  The defendant must first establish that he had an expectation of privacy in the locations searched.  Rakas v. Illinois, 439 U.S. 128, 143 (1978).  The expectation of privacy is subjective and objective.  The defendant bears the burden to establish such expectations of privacy.  United States v. Osorio, 949 F.2d 38, 40 (2d Cir. 1991).

In the case before the Court, other than the post arrest statement which the defendant seeks to suppress, the defendant has not provided an affidavit establishing that he had an expectation of privacy in the location searched.  As such, the Court should deny the defendant's request for a hearing and request for suppression.

**Franks Issue**

The government opposes the defendant's request for a Franks Hearing.  A hearing under Franks v. Delaware need be held only if a defendant makes a substantial preliminary showing:  (1) that the warrant affidavit includes a false statement; (2) that the allegedly false statement was made knowingly and intentionally or with reckless disregard for the truth; and (3) that the allegedly false statement is necessary to a finding of probable cause.  Franks v. Delaware, 438 U.S. 154 (1978).  Statements which result from negligence or innocent

mistake are insufficient to justify a hearing.   Moreover, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.   There must be allegations of deliberate falsehood or of reckless disregard for the truth, <u>and those</u> <u>allegations must be accompanied by an offer of proof</u>. ... <u>Affidavits or sworn or otherwise</u> <u>reliable statements of witnesses should be furnished, or their absence satisfactorily</u> <u>explained</u>....   The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, <u>not of any non-governmental informant</u>.   <u>Id.</u>, 438 U.S. at 171 (emphasis added).   Even if that substantial showing is made, defendants still are not entitled to a hearing unless the allegedly false statements are material, <u>i.e.</u>, indispensable to a finding of probable cause.   <u>Id.</u> at 171-72.

Franks does not require that all statements in an affidavit be true; it simply requires that the statements be "believed or appropriately accepted by the affiant as true."   <u>United</u> <u>States v. Campino</u>, 890 F.2d 588, 592 (2d Cir. 1989), <u>cert. denied</u>, 498 U.S. 866 (1990). Moreover, a defendant's submission of his own counter-interpretation of acts does not satisfy the showing required for a <u>Franks</u> hearing.   <u>United States v. Jimenez</u>, 824 F. Supp. 351, 361 (S.D.N.Y. 1993) (collecting cases).

The government opposes the defense request for a hearing pursuant to <u>Franks v.</u> <u>Delaware.</u>   The defense argues that two areas contained false information.   First the defense argues that the information contained within the search warrant affidavit as to the person identified as CW1 is incomplete insofar as the defense alleges that the affidavit failed to state

that CW1 identified another person initially and then, after being directed by the agents to be straightforward, CW1 identified the defendant.   By extension, the defense argues that the affiant should have included information in exhaustive detail regarding this identification procedure and that the omission is fatal to the search warrant.

Preliminarily, the government disputes the defense's version of events and maintains all factual assertions in the search warrant affidavit are accurate.   CW1 never identified another person as being the perpetrator of sex trafficking involving CW1.   Rather, CW1 merely indicated one of the other individuals in the photographic array looked familiar to CW1.   However, CW1 did identify the defendant's photograph as being the person CW1 called "pit bull."   CW1 had stated previously to law enforcement that this person was responsible for sex trafficking of CW1.   Further, it is immaterial that the identification was not included in the search warrant affidavit because CW1 never identified another person as the perpetrator and the affidavit still provided probable cause without this information.

The second allegation raised by the defense is that the affiant did not provide complete and accurate information regarding CW3's statements to law enforcement about the defendant.   The government maintains all factual assertions in this regard contained within the search warrant affidavit are accurate.   Further, this information is not material to the probable cause determination in that it is not essential to the probable cause contained within the search warrant affidavit.

As such, the defense has not made a substantial preliminary showing that the affiant intentionally or recklessly included false material information in the search warrant affidavit. For these reasons, the government asks the Court to deny the defendant's request for such a hearing and suppression on these grounds.

## SUPPRESSION OF OUT OF COURT IDENTIFICATION PROCEDURES

Defendant moves to suppress any pre-trial identification(s) and, alternatively, for a hearing under United States v. Wade, 388 U.S. 218 (1967).   Generally, a prior identification of a defendant by a witness is admissible at trial. F.R.Evid. 801(d)(1)(C).   A pre-trial identification will be excluded from evidence "only if the procedure that produced the identification is 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] is denied due process of law.'" United States v. Bautista, 23 F.3d 726, 729 (2d Cir.), cert. denied sub nom., Minier-Contreras v. United States, 513 U.S. 862 (1994), quoting Stovall v. Denno, 388 U.S. 293, 302 (1967); See also Simmons v. United States, 390 U.S. 377, 384 (1968) (holding suppression warranted "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification").   If there were no impermissibly suggestive procedures, trial identification testimony is generally admissible without further inquiry into the reliability of the out-of-court identification and any question as to the reliability of such identification goes to the weight of the evidence rather than to its admissibility.   United States v. Maldonado-Rivera, 922 F.2d 934, 973 ( 2d Cir. 1990), cert. denied, 501 U.S. 1244

11

(1991).   A pre-trial identification that resulted from an unnecessarily suggestive procedure, may still be admissible "if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability."   United States v. Simmons, 923 F.2d 934, 950 (2d Cir.), cert. denied, 500 U.S. 919 (1991); See generally Manson v. Brathwaite, 432 U.S. 98, 114 (1977) (stating that "reliability is the linchpin in determining the admissibility of identification testimony").   Even grossly suggestive procedures will not require suppression of a witness's identification testimony if it is reliable independent of the improper procedures.   United States v. Bautista, 23 F.3d 726, 729 (2d Cir. 1994) (" we will exclude a pre-trial identification only if it was both produced through an unnecessarily suggestive procedure and unreliable.")

The government is aware of only three out of court identification procedures conducted in this case involving the defendant.   Two occurred on or about June 5, 2014, one of which involved a photographic array containing a photograph of the defendant.   The other involved a single photograph of the defendant.   Both of these photographic procedures involved individuals involved with maintaining the property in which the defendant resided. One is identified at CW2 in the search warrant affidavit, the other is described as CW3 above and was also identified in the search warrant affidavit as CW3.

The second, involving a photographic array with a photograph of the defendant, occurred on June 6, 2014.   This photographic array was displayed to a witness in the sex trafficking investigation, who is described as CW1 above and was also identified in the search warrant affidavit as CW1.

The government asserts that these procedures were not unnecessarily suggestive and conducive to irreparable mistaken identification.   Should the defendant sufficiently allege a violation of a right through a sworn affidavit creating an issue of fact, the government does not oppose a hearing on this issue, as requested by the defendant.

Furthermore, the government requests that such hearing be bifurcated and that the suggestiveness of the procedures used be litigated in the first instance. If the Court determines the identification procedures were unduly suggestive, the government would request that the Court permit a hearing to determine whether a sufficient independent basis exists for the witnesses to identify the defendant and that any "identification hearing" be conducted shortly before trial.

## SUPPRESSION OF STATEMENTS

The defendant made statements on or about June 10, 2014, in the area of 49 Troup Street, Rochester, New York, and while at the RPD Public Safety Building.   The United States opposes defendant's motion to suppress the statements he made to law enforcement at the time he was detained and at the time of his arrest because they were not the product of unlawful police conduct and they were knowingly, intelligently and voluntarily given.   See, Miranda v. Arizona, 384 U.S. 436 (1964).

The Court should deny the defendant's request to suppress the statements because those made by the defendant at the scene were spontaneously made, and not the product of any custodial interrogation, or its "functional equivalent."   Rhode Island v. Innis, 446 U.S. 291, 301 (1980); see also, Miranda v. Arizona, 384 U.S. 436, 478 (1964)("[V]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today").

The statements made by the defendant at the Public Safety Building on the date of the search warrant execution were subsequent to his knowing, intelligent, and voluntary waiver of his Miranda rights.   Further, the defendant made these statements after having been properly detained by police officers in connection with this investigation.   There was no violation of defendant's constitutional rights, nor any conduct of law enforcement which rendered defendant's statements involuntary.

Accordingly, the United States requests that the Court deny defendant's motion to suppress the statements he made to police.   However, should the defendant provide a sworn affidavit creating an issue of fact, the United States does not oppose a hearing on this issue to resolve any disputes in this regard.

14

## BRADY

The Government acknowledges its obligation pursuant to In re, United States v. Coppa, 267 F.3d 132 (2d Cir. 2001).   See also, Brady v. Maryland, 373 U.S. 83 (1963).   To the extent that the Government is aware that any such information is known to exist, the defendant has been advised, with the exception of impeachment material (Giglio[1] material). Giglio material will be disclosed two weeks before trial or at the pretrial conference, whichever occurs first.   The Government also acknowledges its continuing obligation with respect to all material exculpatory information.

## DISCOVERY AND INSPECTION

Defendant has been provided with discovery under cover letters dated October 14, 2014, and November 3, 2014, indicating that the United States intends to use the items contained therein.   If further information becomes available, it will be forwarded promptly to the defendant.   As for the defendant's instant requests, to the extent that it calls for items not contemplated by Rule 16 of the Federal Rules of Criminal Procedure, it is opposed.   The United States will provide the requested Rule 16(a)(1)(E) material two weeks prior to trial or at the pre-trial conference, whichever occurs sooner.

Defense counsel is encouraged to meet with me in order to review my file.

---

[1]   Giglio v. United States, 405 U.S. 150 (1972).

15

## RECIPROCAL DISCOVERY DEMAND

The defendant having made a demand for discovery and inspection pursuant to Rule 16(a)(1)(A), (B), (C), (D) and/or (E) of the Federal Rules of Criminal Procedure, and counsel for the United States having complied with said demand, the United States now, pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure, hereby demands to inspect and copy or photograph the following:

1.      All books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of the defendant and which the defendant intends to introduce as evidence in chief at the trial;

2.      Any and all results or reports of physical or mental examinations and of scientific tests of experiments made in connection with the instant case, or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call at trial when the results or reports relate to his testimony;

3.      Disclosure, pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure, of a written summary of testimony the defendant intends to use under Rules 702, 703 and 705 of the Federal Rules of Evidence, including the opinions of witnesses, the cases and reasons therefor and the witness' qualifications.   With regard to the underlying bases for an expert's testimony, that should cover not only written and oral reports, tests, reports and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rules of Evidence 703, including opinions of other experts (see

Conference Committee Notes, 1993 Amendment, Rule 16, Federal Rules of Criminal Procedure, p. 84);

4.      Pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure, counsel for the United States requests that, prior to the trial of the above-captioned case, the defendant disclose all prior statements, as defined in F.R.Cr.P. 26.2(f), of any witness to be called by the defendant in the trial of this case, as such statements relate to the subject matter of the witness' direct testimony.   Further, counsel for the United States requests that such material be provided on the same basis that we are to supply materials pursuant to 18 U.S.C. § 3500, that is, no later than two weeks prior to the start of trial[2]; and

5.      If, prior to or during trial, the defendant discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this Rule, the defendant shall promptly notify the attorney for the United States of the existence of the additional evidence or material as required by Rule 16(c) of the Federal Rules of Criminal Procedure.

---

[2] Pursuant to the Local Rules, we request a meeting with defendant's counsel as soon as possible to discuss the resolution of any problems with this reciprocal discovery request.

## RULES 404, 608 AND 609

Defendant has been provided with a copy of his criminal record.  It would be the government's intention to use any convictions which are listed or referred to in the record and reports as felonies, or which bear on defendant's character for truthfulness or untruthfulness, for the purpose of impeaching the defendant's credibility.  It is the government's position that the probative value of admitting any such past acts into evidence outweighs any prejudicial affect they may have.  As required by Rule 404(b), the government will "provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial."

## JENCKS ACT

The defendant seeks disclosure of material pursuant to Title 18, United States Code, Section § 3500 prior to trial. The Government agrees to provide such information two weeks before the commencement of trial in this case.  United States v. Feola, 651 F. Supp. 1068, 1141 (S.D.N.Y. 1987).

## PRESERVATION OF ROUGH NOTES

The Government acknowledges its obligation to insure that agents preserve their rough notes.  But see, United States v. Gotchis, 803 F.2d 74 (2d Cir. 1986); United States v.

18

<u>Griffen</u>, 659 F.2d 932, 937 (9th Cir.), <u>cert.</u> <u>denied</u>, 456 U.S. 949 (1982); <u>United States v.</u>

<u>Ammar</u>, 714 F.2d 238 (3d Cir.), <u>cert.</u> <u>denied</u>, 464 U.S. 936 (1983).


## **RESERVATION OF MOTIONS**


    The government has no objection to the defendant bringing further motions in this case, provided that such motions could not have been previously made and decided by the Court.


Dated: Rochester, New York, December 1, 2014

                          WILLIAM J. HOCHUL, JR.
                          United States Attorney


              By:    s/CHARLES E. MOYNIHAN
                          Assistant United States Attorney
                          United States Attorney's Office
                          Western District of New York
                          100 State Street, Suite 500
                          Rochester, New York   14614
                          (585) 263-6760, ext. 23971
                          Charles.Moynihan@usdoj.gov

To:   Steven Slawinski, Esq.