**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
**UNITED STATES OF AMERICA**

     v.                                          **14-cr-6149-EAW-JWF**

**WILLIE HARRIS,**

                **Defendant.**

## POST-HEARING SUPPLEMENTAL SUBMISSION REGARDING MOTION TO SUPPRESS

### I. Introduction

Willie Harris, the defendant in the above-captioned case, lived at 49 Troup St., Apartment 21, on June 9, 2014. On that day, FBI Special Agent Barry Couch applied for a search warrant regarding Harris' residence based on suspicions that Harris was engaged in the sex trafficking of an underage female.  The warrant was granted by United States Magistrate Judge Marian Payson and the search occurred the next day, on June 10. No evidence of any sex trafficking was found in Harris' apartment. Instead, agents found cocaine and a short-barreled shotgun during the search, and charged Harris as possessing those. Harris now is charged by Federal Indictment with several firearm and drug statute violations as a result of the contraband found during the search of his apartment.

The Defense previously moved to suppress the evidence found as a result of the search warrant and statements that Harris made during the course of the search (Docket # 16). The government opposed the defense's motion. (Docket # 17). On January 30, 2015, a hearing was held under *Franks v. Delaware*, 438 U.S. 154 (1978), to determine if the search warrant was properly obtained by SA Couch. The defense's position remains that the warrant application contained material omissions and misrepresentations and that the resulting evidence and statements obtained by law enforcement should be suppressed.

## II. Legal Standard

Suppression remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or should have known was false except for his reckless disregard of the truth. *See United States v. Leon*, 468 U.S. 878, 97, 923 (1984).  Similarly, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth was included by the affiant in the warrant affidavit and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendants request. *See Franks*, 155-56. (1978).

In *Herring v. United States,* 555 U.S. 135, 145 (2009) the Court held that the Constitution allowed defendants, in some circumstances, "to challenge the

truthfulness of factual statements made in an affidavit supporting the warrant," even after the warrant had issued. *See Franks,* 438 U.S. 155-156. If those false statements were necessary to the Judge's probable cause determination the warrant would be "voided." Id.

If an issuing judge is misled by information in a search warrant affidavit and the officer preparing the affidavit knew the information was false or misleading, or would have known but for the officer's reckless disregard, evidence recovered as a result of the execution the warrant must be suppressed if the affidavit's remaining content is insufficient to establish probable cause. *Franks* at 155. An affidavit may be considered misleading not only because of the information contained in the affidavit, but also as a result of material omissions that would have undermined the finding of probable cause. *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000). The Supreme Court has instructed that when applying for a search warrant, "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

In order to suppress evidence obtained from a misleading affidavit, a defendant must show that: "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and

(2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause or necessity finding." *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (marks and citations omitted).

## III. Argument

In this case, the June 9 search warrant affidavit by SA Couch contained incomplete and inaccurate information. This affidavit was relied on by Judge Payson in determining probable cause to issue the warrant. The information that was missing and inaccurate was relevant to whether there was probable cause to believe that Harris himself was engaged in sex trafficking at 49 Troup Street, Apartment 21. As there was no evidence of sex trafficking found, it further underscores the fact that there was no basis to issue a search warrant for Harris' apartment.

In his affidavit, SA Couch stated that he was told by CW1 that she was being prostituted from 21 Troup Street by a man named "Shawn". However, when SA Couch visited 21 Troup Street, the name "Willie Harris" was on the mailbox. However, the affidavit neglects to mention CW1's previous identification of her pimp as "Pit Bull" and that she identified a photo of Harris as "looking like ... Pit Bull". CW1's vague and unsure identification of Harris in a photo-array was not mentioned at all in the affidavit Couch submitted for the search warrant. At the

4

hearing, Couch stated that he did not include this identification process in his affidavit. (Tr. 79-80).

The government did not present any evidence from CW1 at the hearing. Thus, Couch's testimony about her statements to him that appeared in the affidavit are wholly uncorroborated. The government has stated to the defense that it attempted to locate CW1 but could not do so. However, CW1's testimony is necessary to corroborate Couch's application for his search warrant. It is unclear if or how CW1 identified Harris as her alleged pimp. Remember, no evidence of sex trafficking was found during the search to confirm that Harris would have been engaged in sex trafficking.

In his affidavit, SA Couch mentions that he spoke to a CW3, who was the property supervisor for 49 Troup Street. The affidavit states that CW3 said that there had been a "lot of men" coming out of Apartment 21 and that he also had seen a young white girl coming out of Apartment 21. He also was shown a picture of CW1, who he said looked similar to the girl that he saw coming out of the apartment. The affidavit also states that CW3 said that the girl he saw appeared to be fifteen years old (Affidavit, para. 15).

At the hearing, CW3 was identified as Sam DiMaggio. DiMaggio testified for the defense and contradicted the information that was contained in Couch's

5

affidavit. DiMaggio first stated that he initially told Couch he did not see Harris with a young girl (Tr. 7). DiMaggio also said that "Willie never asked me" if he wanted to have sex with the girl that he saw him with. (Tr. 9). DiMaggio also said that it was the girl who solicited him for sex herself, not Harris. (Tr. 10). While DiMaggio later seems unclear about what he told SA Couch in his testimony, he was clear at the end of his direct testimony when he stated that he never told the FBI anything about Harris running a prostitution business or offering him girls. (Tr. 11). DiMaggio also said that any inconsistencies were a result of the agent's persistence: "[T]hey kept persisting. Maybe I told them something they wanted to hear, but it was not true ... the girl asked me if I wanted to party." (Tr. 21).

     DiMaggio also testified that he never said that he saw a lot of men coming in and out of Apartment 21, which was referenced in Couch's Affidavit. (Tr. 25). Furthermore, he stated that he did not say that CW1 "appeared to be 15 years old", which was what Couch attributed to him in his affidavit. (Tr. 39). DiMaggio said that the agents said that she appeared to be 15, not DiMaggio himself. (Tr. 40). This is backed up by Geetha Vijay's testimony, who said that she did not remember DiMaggio stating the age of CW1. (Tr. 41). Geetha Vijay, the property manager/owner of 49 Troup Street, testified for the government and seemingly contradicted DiMaggio's testimony. However, Vijay also stated that she did not

6

remember DiMaggio ever describing CW1, either. (Tr. 54). This conflicts with Couch's testimony that DiMaggio had described her as "15 looking"(Tr. 66) and that "[DiMaggio] offered that she was 15."(Tr. 85).

Also, Couch omitted the fact that DiMaggio could not identify Harris when he was shown the photo array with Harris' picture included in it.(Tr. 71). At the hearing, Couch admitted that he did not put information about DiMaggio's misidentification of Harris in his affidavit "because it wasn't needed for the probable cause for the search warrant to get in the house." (Tr. 76). However, that was a determination for the judge, not for SA Couch to make. Agent Couch deliberately left out material facts that Judge Payson should have considered. One of these facts was that the person who allegedly was trafficking CW1 was the same person who DiMaggio recognized as living in Apartment 21.

The identifications of both CW1 and CW3(DiMaggio) would be necessary for establishing probable cause in this case. In this case, the identifications by both witnesses were unduly suggestive and the government has previously stated that it does not plan to admit either of them as evidence at trial. However, Couch's affidavit does not include the fact that both witnesses in this case had difficulty identifying Harris from the array that he showed them. Without a clear identification of Harris, there could be no probable cause that he was trafficking

7

CW1 out of his apartment at 49 Troup Street. In the search warrant affidavit, it is clear that Couch used the name on Harris' mailbox at 49 Troup Street to find a picture of him in the Monroe County Jail Database. (Affidavit Paragraphs 11-13). The agents then present this photo to CW1 and CW3 and they have difficulty in identifying Harris without the suggestions of law enforcement.

Furthermore, Geetha Vijay (CW2) denied that she *ever* identified Harris from a photo that the agents showed her (Tr. 47). On her direct testimony, Vijay said that she never saw a photo. (Tr. 47). However, this is directly at odds with Paragraph 13 of Couch's affidavit that states that Vijay identified the person in the photo as Willie Harris, the sole tenant of Apartment 21.

Thus, Couch's affidavit did not relate the unsure and unreliable identifications of CW1 and CW3 (DiMaggio) of Harris, and totally manufactured CW2's (Vijay's) identification of him. None of the witnesses reliably identified Harris as being the person residing in Apartment 21 without help from law enforcement. And the affidavit also contains attributions from CW3 that he now testifies that he never said. Thus, the affidavit contains several statements that were erroneous and identifications that were unreliable or never made. The lack of reliability of the affidavit demands that the resulting items found in the search be suppressed.

AO 72A
(Rev. 8/82)

## IV. Conclusion

For all of the above reasons, the affidavit that Judge Payson relied on to grant probable cause was not factually sufficient and the search warrant was illegally obtained. The omissions and incorrect information alleged above were material to the Court's probable cause determination. Because of this, the fruits of the warrant, including the contraband found in the residence as well as Harris' statements about it should be suppressed as resulting from an illegally obtained search warrant. The improper warrant was obtained in violation of Harris' Fourth Amendment rights and there was no exception to the warrant requirement that would have allowed law enforcement to search Harris' apartment.

Dated: April 6, 2015
Rochester, New York

                        Respectfully submitted,

                        S/Steven Slawinski
                        Steven Slawinski
                        Assistant Federal Public Defender
                        Federal Public Defender's Office
                        28 East Main Street, Suite 400
                        Rochester, New York 14614
                        585-263-6201
                        Steven_slawinski@fd.org
                        Attorney for Willie Harris

cc:    Charles Moynihan, AUSA