**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

                                               **14-cr-6149-EAW**

        **v.**

**WILLIE HARRIS,**

                    **Defendant.**

---

**OBJECTIONS TO THE MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATIONS**

## I. Introduction

Willie Harris, the defendant in the above-captioned case, lived at 49 Troup St., Apartment 21, in Rochester, New York, on June 9, 2014. On that day, FBI Special Agent (SA) Barry Couch applied for a search warrant regarding Harris' residence based on suspicions that Harris was engaged in the sex trafficking of an underage female. The warrant was granted by United States Magistrate Judge Marian Payson and the search occurred the next morning, on June 10. No evidence of any sex trafficking was found in Harris' apartment. Instead, agents found cocaine and a short-barreled shotgun during the search, and charged Harris as possessing those. Harris now is charged by federal indictment with several firearm and drug statute violations as a result of the contraband found during the search of his apartment.

The defense moved to suppress the evidence found as a result of the search warrant and statements that Harris made during the course of the search (Docket # 16). The government opposed the defense's motion. (Docket # 17). On January 30, 2015, a hearing was held under *Franks v. Delaware*, 438 U.S. 154 (1978), to determine if the federal search warrant was properly obtained by SA Couch. Magistrate Judge Feldman denied the defense's motion on June 23, 2015 (Docket#15).  The defense's position remains that the warrant application contained material omissions and misrepresentations and that the resulting evidence and statements obtained by law enforcement should be suppressed.

Furthermore, Judge Feldman also denied the defense's motion to dismiss Count 4 of the Indictment for it being multiplicious with Count 5 (Docket # 39). This occurred on September 11, 2015, after additional briefings and hearings by the parties. However, the denial was without prejudice and the defense retained the right to re-address the motion with the District Court in a motion *in limine* during the trial stage of this case.  Harris does not object to this part of the R&R.

## II. Legal Standard

### 1. Standard of Review

After receiving a party's objections to a magistrate judge's R & R, the District Court makes a *de novo* review of the report or findings to which objection is made. 28 U.S.C. § 636(b)(1).  The District Court "may accept, reject, or modify, in whole

or in part, the findings or recommendations made by the magistrate. The [Court] may also receive further evidence or recommit the matter to the Magistrate with instructions." *Id.*; See *United States v. Raddatz*, 447 U.S. 667, 673-75 (1980) (discussing the meaning of *de novo* review under the Federal Magistrates' Act).

## 2. Application of Standard

The defense specifically objects to Magistrate Judge Feldman's R&R as it denies suppression of the evidence found in the search of Harris' residence. At the hearing, the defense showed that there were material omissions and misrepresentations by Agent Couch in his application for the search warrant. These omissions affected the whole package if information that was given to Magistrate Judge Payson when she determined whether or not there was probable cause to search the residence. It is the defense's position that had Judge Payson been given all of the information that SA Couch had known, that she would found that there would not have been probable cause to issue the search warrant for 49 Troup Street and a warrant would not have been issued.

Suppression remains an appropriate remedy if the Magistrate or Judge  in issuing a warrant was misled by information in an affidavit that the affiant knew was false or should have known was false except for his reckless disregard of the truth. *United States v. Leon*, 468 U.S. 878, 897, 923 (1984).

3

In *Herring v. United States,* 555 U.S. 135, 145 (2009) the Supreme Court held that the Constitution allowed defendants, in some circumstances, "to challenge the truthfulness of factual statements made in an affidavit supporting the warrant," even after the warrant had issued. *See Franks,* 438 U.S. 155-156. If those false statements were necessary to the Judge's probable cause determination, the warrant would be "voided." Id.

If an issuing judge is misled by information in a search warrant affidavit and the officer preparing the affidavit knew the information was false or misleading, or would have known but for the officer's reckless disregard, evidence recovered as a result of the execution the warrant must be suppressed if the affidavit's remaining content is insufficient to establish probable cause. *Franks* at 155. An affidavit may be considered misleading not only because of the information contained in the affidavit, but also as a result of material omissions that would have undermined the finding of probable cause. *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000). The Supreme Court has instructed that when applying for a search warrant, "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

In order to suppress evidence obtained from a misleading affidavit, a defendant must show that: "(1) the claimed inaccuracies or omissions are the result of the

4

affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause or necessity finding." *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (marks and citations omitted).

### III. Argument

*1. Inconsistencies Between the Search Warrant Affidavit and the Franks Hearing*

In this case, the June 9, 2014, search a warrant affidavit by SA Couch contained incomplete and inaccurate information. This affidavit was relied on by Judge Payson in determining probable cause to issue the search warrant. The information that was missing and inaccurate was relevant to whether there was probable cause to believe that Harris himself was engaged in sex trafficking in his residence at 49 Troup Street, Apartment 21. As there was no evidence of sex trafficking found, this further underscores the fact that there was no original basis to issue a search warrant for Harris' apartment. There are several inconsistencies between Couch's affidavit and the testimony that were given at the *Franks* hearing before Magistrate Judge Feldman.

In his affidavit, SA Couch stated that he was told by first told by CW1 (a minor female) that she was being prostituted from 49 Troup Street, Apartment 21 by a man named "Shawn." However, Couch's affidavit omits that he showed CW1 a

5

photo array and she then identified someone *other* than Harris in the array (Tr. 78) before her identification of her pimp as "Pit Bull" and that she identified a photo of Harris as "looking like . . . Pit Bull" (Tr. 79). CW1's vague and unsure identification of Harris in a photo-array was not mentioned at all in the affidavit Couch submitted for the search warrant. At the hearing, Couch stated that he did not include this identification process in his affidavit. (Tr. 79-80). At the hearing, Couch stated that CW1 originally pointed to someone other than Harris in the array and then was told "it's very important, You need to be straight forward with us." (Tr. 79). It was only then that CW1 stated identified Harris as "looking like Pit Bull" (Tr. 79). Couch completely omitted CW1's questionable and prompted identification procedures in his affidavit but admitted to them at the hearing.

The government did not present any evidence from CW1 at the hearing. Thus, Couch's testimonies about her statements to him that appeared in the affidavit are wholly uncorroborated. The government has stated to the defense that it attempted to locate CW1 but could not do so. However, CW1's testimony is necessary to corroborate the accuracy of Couch's application for the search warrant. Now, it is unclear if or how CW1 identified Harris as her alleged pimp. Remember, no evidence of sex trafficking was found during the search to confirm that Harris would have been engaged in sex trafficking.

6

In his affidavit, SA Couch also mentions that he spoke to a CW3, who was the property supervisor for 49 Troup Street. The affidavit states that CW3 said that there had been a "lot of men" coming out of Apartment 21 and that he also had seen a young white girl coming out of Apartment 21. He also was shown a picture of CW1, who he said looked similar to the girl that he saw coming out of the apartment. The affidavit also states that CW3 said that the girl he saw appeared to be fifteen years old (Affidavit, para. 15).

At the hearing, CW3 was identified as Sam DiMaggio. DiMaggio testified for the defense and contradicted the information that was contained in Couch's affidavit. DiMaggio first stated that he initially told Couch he did not see Harris with a young girl (Tr. 7). DiMaggio also said that "Willie never asked me" if he wanted to have sex with the girl that he saw him with. (Tr. 9). DiMaggio also said that it was the girl who solicited him for sex herself, not Harris. (Tr. 10). While DiMaggio later seemed unclear about what he told SA Couch in his testimony, he was clear at the end of his direct testimony when he stated that he never told the FBI anything about Harris running a prostitution business or offering him girls. (Tr. 11). DiMaggio also said that any inconsistencies were a result of the agent's persistence: "[T]hey kept persisting. Maybe I told them something they wanted to hear, but it was not true ... the girl asked me if I wanted to party." (Tr. 21).

7

DiMaggio also testified that he never said that he saw a lot of men coming in and out of Apartment 21, which was referenced in Couch's affidavit. (Tr. 25). Furthermore, he stated that he did not say that CW1 "appeared to be 15 years old", which was what Couch attributed to him in his affidavit. (Tr. 39). DiMaggio said that the agents said that she appeared to be 15, not DiMaggio himself. (Tr. 40). This is backed up by Geetha Vijay's testimony, who said that she did not remember DiMaggio stating the age of CW1. (Tr. 41). Geetha Vijay (CW2), the property manager/owner of 49 Troup Street, testified for the government and at times contradicted DiMaggio's testimony. However, Vijay also stated that she did not remember DiMaggio ever describing CW1, either. (Tr. 54). This conflicts with Couch's testimony that DiMaggio had described her as "15 looking"(Tr. 66) and that "[DiMaggio] offered that she was 15."(Tr. 85).

Also, Couch omitted the fact that DiMaggio could not identify Harris when he was shown the photo array with Harris' picture included in it (Tr. 71). At the hearing, Couch admitted that he did not put information about DiMaggio's misidentification of Harris in his affidavit "because it wasn't needed for the probable cause for the search warrant to get in the house." (Tr. 76). However, that was a determination for the issuing judge, not for SA Couch to make. Agent Couch deliberately left out material facts that Judge Payson should have considered.

The identifications of Harris by both CW1 and CW3 (DiMaggio) would be necessary for establishing probable cause in this case. However, Couch's affidavit does not include the fact that both witnesses in this case had difficulty identifying Harris from the array and photo that he showed to them. Without a clear identification of Harris, there could be no probable cause that he was trafficking CW1 out of his apartment at 49 Troup Street. In the search warrant affidavit, it is clear that Couch used the name on Harris' mailbox at 49 Troup Street to find a picture of him in the Monroe County Jail Database (Affidavit Paragraphs 11-13). The agents then presented this photo to CW1 and CW3 and they have difficulty in identifying Harris without the suggestions of law enforcement.

Furthermore, at the hearing, Geetha Vijay (CW2) denied that she *ever* identified Harris from a photo that the agents showed her (Tr. 47). On her direct testimony, Vijay said that she never saw a photo. (Tr. 47). However, this is directly at odds with Paragraph 13 of Couch's affidavit that states that Vijay actually identified the person in the photo as Willie Harris, the sole tenant of Apartment 21.

Thus, Couch's affidavit did not relate the unsure and unreliable identifications of CW1 and CW3 (DiMaggio) of Harris, and totally manufactured CW2's (Vijay's) identification of him. None of the witnesses reliably identified Harris as the person residing in Apartment 21 without help from law enforcement. And the affidavit also

9

contains attributions from CW3 that he now testifies that he never said. Thus, Couch's affidavit contains several statements that were erroneous and identifications that were unreliable or never made. The lack of reliability of the affidavit demands that the resulting items found in the search be suppressed.

## 2. The Magistrate Judge's Report and Recommendation

Judge Feldman stated in his R&R that he found "no basis to support Harris's allegations that Agent Couch made 'intentional and material representations or omissions in the warrant affidavit'" (R&R p. 13, quoting *United States v. Mandell*, 752 F.3d at 552 and *United States v. Franks*, 438 U.S. at 64-65). Feldman also stated, "[E]ven if paragraphs fourteen and fifteen were removed from Agent Couch's affidavit, there remained sufficient evidence to support a finding of probable cause to search the residence." (R&R p. 13).

The defense disputes the Magistrate's conclusions. In this case, we are not dealing so much with incorrect information, but the information that SA Couch neglected to include in his application. Couch intentionally left out the misidentifications of Harris by CW1 and CW2 (DiMaggio). These are important because the information about the misidentifications were not "inaccurate or misleading" (R&R p. 14), they were absent altogether. It is unknown if Judge Payson

10

would have issued the warrant had Couch informed her of the unreliable and prompted identifications by the witnesses that he interviewed.

Magistrate Judge Feldman stated that even if Paragraphs 14 and 15 were removed from the application, there would have been probable cause (R&R, p. 13). These paragraphs dealt with the information supplied by CW3, Sam DiMaggio. The R&R states that DiMaggio's testimony was "all over the place" (R&R p. 12) and was not credible. If this were the case, then the information supplied to Couch by CW1, the alleged child prostitute, would be even *more* important in the determination of probable cause. Her problematic and incorrect identifications of Harris (by name and photo) would have been considered even more heavily by Judge Payson given the absence of any corroboration in the affidavit by DiMaggio.

CW1 was the first person that SA Couch spoke with and her interactions with him kicked off the investigation that led to the search warrant being issued in this case. However, aside from DiMaggio's conflicting statements as to whether or not there were men and a girl coming in and out of Harris' apartment, her statements to Couch about Harris were uncorroborated. The Court would need to hear from her and then make a determination as to whether Couch's affidavit contained material omissions or misleading statements. Couch's interactions with CW1 form an especially important part of his affidavit for the search warrant, and it is unknown

AO 72A
(Rev. 8/82)

what CW1's version of the story is. This is especially true now given the unreliability of DiMaggio's identification and testimony by Vijay (CW2) at the hearing that she never made an identification of Harris to Couch.[1] Thus, CW1 would be the only person who identifies Harris as being involved in sex trafficking and her account is uncorroborated by any other reliable evidence or testimony.

At the time of the original hearing, CW1 could not be located and was not able to be subpoenaed or located to testify. After that, it was determined that SA Couch could deliver a letter to the CW1 from the defense. I sent SA Couch the sealed letter in April 2015, but have not heard a response from CW1. If the Court decides not to suppress the evidence in this case, the defense would like the ability to question CW1 to see if there are any inaccuracies as to what is attributed to her in Couch's report or affidavit. It would request that the Court re-open the hearing to hear her testimony now that she has been located.

The Court has the ability to re-open the hearing because review of the R&R in this case is *de novo*. *See* 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 673-75 (1980). CW1 should be questioned regarding the information that she

---

[1]

*See* Suppression Hearing Transcript, p. 47. Vijay stated, "I don't think I saw a picture, but I knew that a picture was shown to [DiMaggio]". In paragraph 13 of Couch's affidavit, he stated, "We showed CW2 (Vijay) the picture of Willie Harris ... CW2 identified the male in the picture as Willie Harris. Thus, Paragraph 13 of the Affidavit, where Vijay is said to identify Harris, is also unreliable.

AO 72A
(Rev. 8/82)

gave SA Couch and if this information is the same that appeared in his search warrant application to Judge Payson.

## IV. Conclusion

For all of the above reasons, the affidavit that Judge Payson relied on to grant probable cause to search was not factually sufficient and the search warrant was illegally obtained. The omissions and incorrect information alleged above were material to the Court's probable cause determination. Because of this, the fruits of the warrant, including the contraband found in the residence, as well as Harris' statements about it, should be suppressed as resulting from an illegally obtained search warrant. The warrant was obtained in violation of Harris' Fourth Amendment rights and there was no exception to the warrant requirement that would have allowed law enforcement to search Harris' apartment.

**The defense is requesting that the Court to suppress the evidence found at 49 Troup Street, Apartment 21, because of the omissions and misrepresentations in Couch's affidavit. Absent that, it would request that the Court re-open the hearing so that it may consider evidence and testimony from CW1, who is now believed to be located**.

AO 72A
(Rev. 8/82)

Dated: September 28, 2015
Rochester, New York

                                     Respectfully submitted,

                                        S/Steven Slawinski
                                      Steven Slawinski
                                      Assistant Federal Public Defender
                                      Federal Public Defender's Office
                                      28 East Main Street, Suite 400
                                      Rochester, New York 14614
                                      585-263-6201
                                      Steven_slawinski@fd.org
                                      Attorney for Willie Harris

cc:    Charles Moynihan, AUSA

AO 72A
(Rev. 8/82)