IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA | 14-CR-6149EAW |
| -vs- | **UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION** |
| WILLIE HARRIS, | |
| Defendant. | |

---

The United States of America, through its attorney, William J. Hochul, Jr., United States Attorney for the Western District of New York, Charles E. Moynihan, Assistant United States Attorney, of counsel, does hereby make and file its response to the defendant's objections the Report and Recommendation of Magistrate Judge Jonathan W. Feldman.

## PROCEDURAL HISTORY

The defendant, Willie Harris, currently stands indicted in a multiple-count indictment charging him with a firearms and controlled substance possession offenses stemming from his possession of a short-barreled shotgun and cocaine on June 10, 2014. Harris in his omnibus motions moved to suppress certain evidence and statements. The Court held an evidentiary hearing on January 30, 2015, in which the defense called

Sabastian DiMaggio to testify. The government called Geetha Vijay and Federal Bureau of Investigation Special Agent Barry Couch.

On June 23, 2015, Magistrate Judge Feldman issued a Report and Recommendation in which he recommended denial of the defendant's various suppression motions. For the reasons stated below, the United States urges the District Court to adopt the Report and Recommendation of Magistrate Judge Feldman with respect to the denial of the various suppression motions. If not specifically stated, the United States generally opposes all requests of the defendant related to these motions.

## STANDARD OF REVIEW

At the issuance of a report and recommendation to a district court, that district court may "modify, or set aside any part of the order that is contrary to the law or clearly erroneous." Fed. R. Crim. P. 59(a). The standard of review in considering objections to a magistrate court's report and recommendation is de novo. Fed. R. Crim. P. 59(b)(3). Further, the district court can "accept, reject, or modify the recommendation, receive further evidence or resubmit the matter to the magistrate judge with instructions." Id.

## SUMMARY OF MAGISTRATE COURT'S FINDING

In its Report and Recommendation, the Magistrate Court recommended denial of the defense's motion for suppression. In so doing, the Magistrate Court observed that a

search carried out pursuant to a search warrant is ordinarily presumed to be valid. However, an aggrieved party may challenge the validity of the search warrant and the resulting search and seizure by challenging the truthfulness of factual assertions within the affidavit which supports the search warrant.  R. & R. (6/23/2015), page 11.  In order to successfully challenge the search and seizure of evidence pursuant to a search warrant, the Magistrate Court noted that "the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause or necessity finding."  R. & R. (6/23/2015), page 11.

The Magistrate Court held "The defendant has failed to meet his burden on either of the required showings."  R. & R. (6/23/2015), page 11.  The Magistrate Court determined that Harris "failed to convince the Court that there are any material inaccuracies in the search warrant."  R. & R. (6/23/2015), page 11.  DiMaggio's testimony, offered by the defense in support of its motion, was "hardly a model of clarity or consistency . . ." and was '"all over the place" and just not credible.'  R. & R. (6/23/2015), page 12.  The Magistrate Court stated:

> The Court concludes that DiMaggio's recollection of his encounter with Agent Couch was influenced by both his relationship with Harris and his desire to keep his job by not admitting that he knew Harris was "pimping" young girls at the apartment complex.  DiMaggio's equivocal and vacillating testimony on the alleged inaccuracies in Agent Couch's supporting deposition fall far short of demonstrating that Agent Couch intentionally misled Judge Payson into issuing a warrant without probable cause.
>
> R. & R. (6/23/2015), page 112-13.

3

Still further, the Magistrate Court found that there was no basis to believe that Couch made intentional and material misrepresentations or omissions and found Couch's testimony to be "credible and fully consistent with the information he utilized in his supporting affidavit." R. & R. (6/23/2015), page 13.

Finally, the Magistrate Court found that any "incomplete" or "inaccurate" information was not material and that even if paragraphs 14 and 15 were removed, as allegedly inaccurate and misleading, from the supporting affidavit, there still existed sufficient probable cause upon which to support the issuance of the search warrant. R. & R. (6/23/2015), page 13-14. Based upon this, the Magistrate Court recommended that "the defendant's motion to suppress the search of Apartment 21 of 49 Troup Street **be denied**." R. & R. (6/23/2015), page 14.

## SUMMARY OF ISSUES

I.  Whether the Magistrate Court properly determined that the defense failed to show the search warrant affidavit intentionally or recklessly contained false material information or omissions.

II. Whether the District Court should deny the defendant's request to re-open the suppression hearing.

# ARGUMENT

## I. The Magistrate Court properly determined that the defense failed to show that the search warrant affidavit intentionally or recklessly contained false material information or omissions.

### A. Legal Standard

Reviewing courts will evaluate this Court's conclusions of law under a de novo standard of review and under a clear error standard as to findings of fact. Pierce v. Underwood, 487 U.S. 552, 558 (1988).

"Ordinarily, a search or seizure pursuant to a warrant is presumed valid. In certain circumstances, however, a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search and seizure." United States v. Awadallah, 349 F.3d 42, 64 (2d Cir. 2003) citing Franks v. Delaware, 438 U.S. 154, 164-72 (1978). A defendant wishing to invoke the Franks doctrine must show that an affidavit contained intentional and material misrepresentations or omissions. Awadallah, 349 F3d at 64. The Court may hold such a hearing when it determines that the defense has made a substantial preliminary showing: (1) that the warrant affidavit includes a false statement; (2) that the allegedly false statement was made knowingly and intentionally or with reckless disregard for the truth; and (3) that the allegedly false statement is necessary to a finding of probable cause. See Franks v. Delaware, 438 U.S. 154 (1978). Further, in order to prevail in a suppression motion on these grounds, '[T]he defense must show: "(1) the claimed inaccuracies or omissions are the

result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding."' Canfield, 21 F.3d at 717-18 (2d Cir 2000) quoting United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998).  The court considering such a motion should apply this framework upon conducting the Franks hearing.  See United States v. Tzraska, 111 F.3d 1019, 1027-28 (2d Cir. 1997).

"'A misrepresentation or omission is intentional when "the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth."' Awadallah, 349 F3d at 64 citing United States v. Canfield, 212 F.3d 713, 717-18 (2d Cir. 2000).  'It is material when "the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding."' Awadallah, 349 F3d at 64-65 citing United States v. Canfield, 212 F.3d 713, 717-18 (2d Cir. 2000).

However, after the hearing, the Court must adhere to the fundamental underpinning that statements which result from negligence or innocent mistake are insufficient to justify a declaration that a search warrant was defective.  Franks, 438 U.S. at 171.  Further, Franks does not require that all statements in an affidavit be true; it simply requires that the statements be "believed or appropriately accepted by the affiant as true." United States v. Campino, 890 F.2d 588, 592 (2d Cir. 1989), cert. denied, 498 U.S. 866 (1990) citing Franks v. Delaware, 438 U.S. 154, 165 (1978).

6

B. <u>Argument</u>

The Magistrate Court properly recommended the District Court deny suppression of the evidence seized from Harris' apartment because the defense failed to show that the affidavit supporting the search warrant contained false material information. The defense argued that three essential facts placed in paragraph 14 of the search warrant affidavit were false. First, the defense argued DiMaggio did not say he saw men appearing to come to apartment 21. Second, the defense argued that DiMaggio never said he saw Harris with a young-looking girl. Finally, the defense argued that DiMaggio did not say that Harris offered a young girl to him.

As the Magistrate Court noted, DiMaggio's testimony was marked by lapses in memory, admitted mistakes and was often contradictory. While, DiMaggio denied ever telling Couch that he saw men in or going to Harris' apartment, (Record at 16-17, 25,) he readily admitted that he could not recall what he said to Couch and Tucker numerous times. (Record at 11, 12, 13-14, 20, 23, 27-28.) DiMaggio even contradicted himself. DiMaggio, at first testified that he never told Couch *Harris* offered a girl for sex. (Record at 8.) However, DiMaggio later said that he could have told Couch that Harris offered the girl to him and his friends, but qualified that it would have been incorrect or mistaken. (Record at 9, 11, 12-13, 20, 26.) He also said, in a third version of events, that girl he saw with Harris asked him if he wanted to "party." (Record at 8-9.) He may have been confused about whether Harris was offering the girl to him for sex, or if it was the girl herself. Either way, DiMaggio received the offer when Harris was present. The reasonable interpretation

7

of this event is that DiMaggio believed that Harris was with the girl and told Couch about this incident, as Couch described in the affidavit. Finally, during direct examination, DiMaggio admitted that he told Couch that he saw Harris with a "white girl" one time. (Record at 7-8, 10, 26.)[1] This is consistent with Couch's statements in the search warrant affidavit.

As to the defense's arguments that the search warrant affidavit contained false, material information, the testimony of both Couch and Vijay showed the defense is wrong and support the finding of the Magistrate Court. Couch described how he and Tucker went to 49 Troup Street to investigate allegations that Harris was prostituting young girls out of that location. (Record at 58.) DiMaggio told Couch and Tucker that he had seen men going to the apartment. (Record at 65.) Couch testified that DiMaggio told them that he had seen Harris with young girls. (Record at 65.) Couch recalled that, at this time, DiMaggio "volunteered" that Harris had offered a young-looking "15-year-old" girl for sex and that this happened outside of the apartment complex. (Record at 65.)

Vijay's testimony corroborated Couch's testimony, adding support for the Magistrate Court's determination that the defense failed to meet its burden. Vijay testified that she was present for a good portion of the first meeting between DiMaggio, Couch and Tucker.

---

[1] The defense cites several instances where it believes that DiMaggio offered testimony which contradicted the information contained within the search warrant affidavit. However, as the Magistrate Court noted, DiMaggio's testimony did nothing to undermine Couch's affidavit because DiMaggio's suppression hearing 'testimony was "all over the place" and just not credible." R. & R. (6/23/2015), page 12. The District Court should disregard the defense arguments to the extent they rely on DiMaggio's suppression hearing testimony given the little weight accorded the testimony by the Magistrate Court.

Aside from stating that she remembered the meeting between Couch, Tucker and DiMaggio, Vijay recalled being mortified upon learning that Harris had propositioned a young girl to DiMaggio or any of his friends. While she could not recall all of the details of the meeting, such as the exact date of the meeting, she did remember DiMaggio saying he saw Harris with a young "woman," that he could not recall exactly when, that DiMaggio 'said, "[Harris] was pimping her" and that DiMaggio told Couch that Harris had approached DiMaggio about the girl. (Record at 49-50.)

The Magistrate Court found Couch's version of events, which was supported by Vijay's testimony, was credible. Couch's answers were candid and marked by specific detail. Likewise, Vijay was candid in her answers, offering facts when she could and admitting when she could not remember. Further, Vijay never said that the events later testified to by Couch did not happen. Rather, she described in her own words how some of those events occurred and that she could not remember about others. For example, Vijay did not say that Couch never showed her a photographic array containing a picture of Harris, as the defense argued in its post-hearing memorandum of law, (See Post-Hearing Supplemental Submission Regarding Motion to Suppress, Document 24, dated 4/06/15, page 8), and now argues in its objections to the Report and Recommendation. (See Objections to the Magistrate Judge's Report and Recommendation, Document 41, dated 9/28/15, page 9.) Rather, during direct examination, Vijay was equivocal as to this issue. However, during cross examination, she was clear that she did not remember. (Record at 47, 52.) Couch, for his part, was clear in his testimony that he did show such an array to Vijay and that Vijay told him she knew the person to be Harris and that he resided in

9

Apartment 21. (Record at 60-61.) Also, Couch's testimony and Vijay's testimony, when compared, agree in that they both describe the same event, albeit from different perspectives. This adds another level of credibility to the testimony of both witnesses.

Second, the Magistrate Court was correct in finding that any incomplete or inaccurate information was not material to any finding of probable cause. The defense contends that Couch misled the issuing magistrate by not including information regarding photographic identifications of Harris by DiMaggio and Cooperating Witness #1. However, inclusion of these identifications would have supported probable cause. As to the reliability of the identifications, Cooperating Witness # 1 was clear that the person depicted in the photographic array looked like a person she called "Pitbull," which was her name for Harris. (Record at 78-79.) Further, the identification of Harris by DiMaggio was not questionable because DiMaggio knew Harris. (Record at 4-5, 18, 24-25.) They are, as Couch believed, unnecessary to give rise to probable cause given the already abundant evidence in the search warrant affidavit.

The search warrant affidavit is still supported by probable cause. Couch presented specific details regarding criminal activity involving "Shawn," who was later identified as Harris, and Cooperating Witness #1 in paragraphs 5 through 10 of the Affidavit in Support of A Search Warrant. In short, Cooperating Witness #1, who was at the time a sixteen year old female, said "Shawn" arranged for her to prostitute for him. Cooperating Witness #1 engaged in sexual acts with multiple men in exchange for payment, which "Shawn" kept. This happened at hotels, houses and at 49 Troup Street, Apartment 21. "Shawn" advertised

through telephone chat lines while Cooperating Witness #1 would speak with potential clients by using chat lines and would "provide another phone number for the client to call and make the prostitution date arrangements." (Government's Exhibit 2, pages 5-7 (bearing Bates Stamp number Rule_16_Dscv_072-074).) Couch said he inspected the mailbox for 49 Troup Street, Apartment 21, and saw "Willie Harris" printed on it. (Government's Exhibit 2, page 7 (bearing Bates Stamp number Rule_16_Dscv_074).) The Magistrate Court correctly found the search warrant affidavit would still contain probable cause without the contested information.

### II.    The District Court should deny the defendant's request to re-open the suppression hearing.

#### A. Legal Standard

The authority to grant a motion to re-open a suppression hearing is well within the discretion of the court hearing a case. See United States v. Praetorius, 622 F.2d 1054, 1061 (2d Cir. 1979) cert. denied, 449 U.S. 860 (1980); See also United States v. Tzakis, 736 F.2d 867, 872 (2d Cir. 1984). The decision to re-open a hearing is reviewed for abuse of discretion. See United States v. Oliver, 626 F.2d 254, 260 (2d Cir 1980); See also United States v. Kanovsky, 618 F.2d 229, 231 (2d Cir, 1980); United States v. Bayless, 201 F.3d 116 (2d Cir. 2000) ("We conclude that the abuse of discretion standard accurately reflects the degree of deference properly accorded a district court's decisions regarding evidentiary matters and the general conduct of trials, and join our sister circuits in adopting it.")

B. **Argument**

The District Court should deny the request to re-open the suppression hearing. The defense argues new evidence has now become available. It argues the location of Cooperating Witness #1 is now known and testimony from Cooperating Witness #1 would be relevant to the questions raised at the suppression hearing.

First, the location of Cooperating Witness #1 is not known to the government. The defense provided the government with sealed envelope after Cooperating Witness # 1 contacted Couch on an unrelated matter. The contents of this envelope are unknown to the government as it did not open the envelope. After Couch unsuccessfully attempted to establish contact with Cooperating Witness # 1 to relay the envelope, Couch delivered the envelope to a facility which had contact with Cooperating Witness #1 and asked the facility to deliver the envelope. A few days later, Couch received information that the envelope had been delivered to Cooperating Witness #1. The method of delivery and the timing of the delivery are unknown. No details surrounding the delivery were provided to the government. Further, the location of Cooperating Witness #1 is unknown to the government.

Even if the location of Cooperating Witness #1 was readily ascertainable by the parties, the inquiry at the suppression hearing is framed above, that of whether the affiant intentionally or recklessly included false material information in the search warrant affidavit. The inquiry is not whether Cooperating Witness #1 would provide information

which would contradict the information provided by the affiant in the search warrant affidavit. Further, there is no reason to believe that Cooperating Witness #1 would offer testimony which is inconsistent with that already brought before the Magistrate Court. Special Agent Couch offered detailed and credible testimony regarding his interaction with Cooperating Witness #1 and included that information in the search warrant affidavit. The Magistrate Court properly found the defense failed in its burden to even show the intentional or reckless inclusion of false material information. The District Court should deny the defense's request to re-open the suppression hearing.

## **CONCLUSION**

For the reasons specified above, the government asks the District Court to adopt the Report and Recommendation of the Magistrate Court which recommended denying the suppression of the seizure of the evidence from 49 Troup Street, Apartment 21, as well Harris' statements, were the product of lawful police conduct.  Further, the District Court should deny the defense request to re-open the suppression hearing.

Dated:     Rochester, New York
           October 14, 2015

                                        WILLIAM J. HOCHUL, JR.
                                        United States Attorney


                              By:       s/CHARLES E. MOYNIHAN
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        100 State Street, Suite 500
                                        Rochester, New York  14614
                                        (585) 263-6760, ext. 23971
                                        Charles.Moynihan@usdoj.gov

To: Steven Slawinski, Esq.