UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                              Plaintiff,

-vs-
                                          **AMENDED OBJECTIONS TO PSR AND**
                                          **STATEMENT WITH RESPECT**
                                          **TO SENTENCING FACTORS**
                                          Docket # 6:14-CR-06149-001

WILLIE HARRIS                            Defendant.
_____

      By and through his counsel, the defendant, Willie Harris, hereby submits the Following objections to the Presentence Investigation Report and Statement with Respect to Sentencing Factors in accordance with Section 6A1.2 of the "Sentencing Guidelines" and Rule 32(b)(6)(B) of the Federal Rules of Civil Procedure.

      This Statement is intended further to assist the Court with its sentencing responsibility pursuant to 18 U.S.C. §3553(a) and 21 U.S.C. § 850. Pursuant to those sections, this Statement is to advise the Court of several factors that Mr. Harris believes are relevant to his sentencing.

**A.    Initial Statement**

    1. According to paragraph 15 of the Amended Pre Sentence Report (PSR), dated August 24, 2016, regarding "The Offense Conduct", the PSR was based upon information provided by Government prosecutors and case agents. The Defendant rejects the information as provided without a thorough impartial investigation by the Probation Department. The Probation Department is <u>not</u> an arm of the Government but serves to inform the Court, without bias. It cannot assume the truthfulness of the information provided without a more diligent effort and investigation.

    2. The Defendant objects to any alleged incriminating information contained in the most

recent PSR which was not presented at trial. As the Court conducted a lengthy trial involving the defendant over 1 week, the Court has ample information and knowledge about the facts of Mr. Harris's case and needn't consider uncorroborated and unsubstantiated evidence regarding the defendant.

**B.    Objections to Revised PSR of August 24, 2016**

1. Paragraph 27: Defendant objects to this paragraph in its entirety. The Defendant submits he told the truth based on his recollection of what happened on June 14, 2014. As indicated at trial, the defendant admitted that he was under the influence of illegal narcotics during his conversations and statements to law enforcement and does not recall exactly what he indicated on that date to law enforcement.

2. Paragraph 28: Defendant objects to receiving no points for acceptance of responsibility. The defendant submits that his constitutional right to have a jury trial should not limit his ability to receive an adjustment for acceptance of responsibility. The defendant accepts responsibility for his conduct; the defendant simply indicates that the charges brought against him were charges he was not guilty of.

3. Paragraph 32: Defendant objects to the addition of 2 points related to possession of a firearm. As presented at trial, the defendant submits that the weapon located at 49 Troup Street was not the defendants. The defendant submits this evidence was uncontroverted at trial. The defendant submits he exercised no direct possession of the weapon or committed any act that would constitute constructive possession of the weapon in question. The defendant requests the court determine he should not receive an additional 2 points under paragraph 32.

4. Paragraph 33: Defendant objects to the 2 level increase under U.S.S.G 2D1.1(b)(12) for maintaining a premise for the purpose of manufacturing or distributing a controlled substance. As the evidence showed during trial, the defendant lived at the Troup Street residence in question. The defendant did not maintain the premise for the purpose of manufacturing or distributing a controlled substance. The defendant was charged by indictment with maintaining a premise for the purpose of manufacturing or distributing a controlled substance. The Jury found Mr. Harris not guilty of this charge after hearing all of the evidence from the Government. The defendant objects to any points under paragraph 33.

5. Paragraph 36: Defendant objects to the application of 2 points based on obstruction of justice. The defendant submits he told the truth at trial based on his recollection of what happened on June 10, 2014. The defendant submits the same argument as indicated in his objection to Paragraph 27 of the PSR.

6. Paragraph 37: The defendant objects to a total offense level of 18, pursuant to the

defendant's objections above. The defendant submits the correct guideline range is 12.

7. Paragraph 39: Defendant objects to any points under paragraph 39 as the defendant submits he was not in possession of the weapon in question.

8. Paragraph 40: Defendant objects to any points being added under paragraph 40. The defendant submits that he did not possess the weapon in question. The defendant submits that even if the defendant possessed the weapon in question, it was not in connection with another felony offense. The allegation is that the gun was found in a closed bin wrapped in clothing. The defendant alleges he never used the weapon in connection to any drug trafficking offense. There was never any allegation made before or during trial that the weapon located had anything to do with the defendant's alleged drug trafficking. There was no allegation that the drugs were located with the gun found or had any connection to drugs or drug-related paraphernalia located at the residence in question.

9. Paragraph 43: The defendant objects to any points being added under paragraph 43. The defendant makes the same objections as those under paragraphs 27 and 36.

10. Paragraph 44: Defendant objects to the adjusted offense level being 30. Defendant submits the correct offense level is 22, as noted by the defendants' arguments above.

11. Paragraph 45: The defendant objects to the combined adjusted offense level of 30. Again, the defendant submits the correct adjusted offense level is 22.

12. Paragraph 47: The defendant objects to receiving no points for acceptance of responsibility. As indicated in defendants' objection to paragraph 28, the defendant accepts responsibility for his conduct. The defendant simply indicates that the charges brought against him were charges he was not guilty of.

13. Paragraph 48: The defendant, as noted above, objects to a total offense level of 30. The defendant submits the correct offense level is 22.

14. Paragraph 74: The defendant objects to a total offense level of 30 and the associated guideline range indicated by probation based on his previous arguments above. The defendant submits that the applicable guideline range guideline range for an offense level of 22 would thus be 63-78 months in the Bureau of Prisons based on a criminal history of IV, or a guideline range of 51-63 months based on a criminal history of III, as argued below.

15. Paragraph 103: The defendant objects to the indication that there are no circumstances warranting a departure, as argued below.

16. Paragraph 104: The defendant objects to this paragraph in so much that the convictions referred to are outside of the guidelines established by our Government to ensure a proper and fair sentence for the defendant. These convictions are not considered for

purposes of the defendant's guideline range and should not be considered by the Court.

17. Paragraph 105: The defendant objects to this paragraph in its entirety. The defendant submits there are sufficient 18 USC 3553(a) factors warranting a departure from the advisory guideline range.

### C. Personal background and family circumstances

The defendant is 46 years old. He was born to his father Willie Harris, and mother Betty Harris. His father passed away in 2006 from Cancer. The defendant also has 2 sisters. Willie's family continues to reside in Rochester, New York. As indicated in the Probation Report, Mr. Harris had anything but a normal, healthy upbringing. The defendant's childhood was chaotic and unstable. The defendant saw and dealt with the effects of alcohol and substance abuse through his family from day 1. Both parents dealt with issues related to alcohol. There was simply no chance for Willie to grow up as a normal child should.

Mr. Harris did his best to grow up away from the life of drugs and crime that was typical of his family upbringing and neighborhood. The defendant attended school, going to Franklin High School until the 10th grade. School was difficult for him as he showed the signs of being learning disabled, a term supported by a psycho-educational report from 1985 recommending that Willie be placed in special education classes. Its reported in the Probation Report that Willie was diagnosed with Conduct Disorder, Under-socialized, Non-aggressive, and paranoid personality traits as early as 1985. It is further alleged that the Mr. Harris may suffer from bipolar disorder and has alleged in the past to hearing voices. Mr. Harris is open and willing to engage in treatment for his issues.

The defendant has further suffered from medical issues that have limited his ability to support himself. Mr. Harris continues to deal with a bad hip; he had his left hip replaced in 2003. Willie continues to deal with pain and a problem related to that hip replacement, and is

subsequently having issues with his right hip as well. Further aggravating Mr. Harris's pain is the fact that Mr. Harris was previously shot in his right hand. He has great pain in his hand as a result of this shooting for which he was the victim.

With little educational and family support, Willie attempted to self medicate to deal with his issues. Willie has a long history of substance abuse, including alcohol, marijuana, and cocaine, both powder and crack. Willie has been through substance abuse treatment several times but has been unable to kick his habits. It has not been for a lack of trying, as he has attended Restart on several occasions. Willie wishes to find a way to maintain his sobriety as his substance abuse issues no doubt has contributed heavily to his past crimes. Mr. Harris is hoping the court will see fit to sentence him to a minimum period of incarceration so that he can, hopefully, engage in treatment while incarcerated so that he can return to society soon and become an outstanding member of the community.

**D.   Criminal History Departure**

The defendant requests a downward departure under U.S.S.G. 4A1.3 because the defendant's criminal history category substantially over-represents the seriousness of the defendants criminal history criminal or the likelihood that the defendant will commit other crimes. Courts have consistently held that a downward departure is appropriate in cases where the criminal history over-represents the seriousness of past criminal conduct or exaggerates a defendant's propensity to commit crimes. *See United States v. Sanchez,* 517 F.3d 651, (2d Cir. 2008); *United States v. Villarini,* 298 Fed. App'x 79 (2d Cir. 2008); *United States v. Jenkins,* 537 F.3d 1 (1st Cir. 2008); *United States v. Mapp,* 2007 WL 485513 (E.D. Mich. 2007); *United States v. Wilkerson,* 183 F. Supp 2d 373(D. Mass 2002); *United States v. Naylor,* 359 F. Supp 2d 521 (W.D. Va. 2005); *United States v. Huerta-Rodriguez,* 355 F. Supp. 2d 1019 (D. Neb. 2005).

The defendants' criminal history per the PSR is currently IV. The defendant submits that the court should depart from a level IV criminal history. Under the PSR, the defendant receives 3 points due to his conviction for an Attempted Burglary on June 28, 1995. The defendant was sentenced to 2-4 years incarceration at that time. The defendant was released on February 25, 1998, but had his parole revoked on March 10, 1999 and was held till his maximum expiration of June 25, 1999. The defendants instant offense commenced on June 10, 2014. Should the instant offense have been 16 days later, or had the defendant been released 16 days prior in June of 1999, the 3 points would not be calculated against the defendant as outside the applicable time limits in the sentencing guidelines and the defendant would have a total of 5 criminal history points, as opposed to the 8 reflected in the PSR. The defendant's criminal history with 5 points would be III as opposed to IV, significantly reducing his guideline range no matter what guideline range the court ultimately adopts. The defendant submits a conviction for Attempted Burglary in the Second Degree from 1995, over 20 years ago and when the defendant was 25 years old, should not be held against him due to the circumstances listed above and requests a downward departure.

**E.    Special Consideration with regard to the Effect of Conviction**

As to the factors that can be considered in determining a sentence, 18 U.S.C. §3553(a)(2)(A), the need for the sentence to promote respect for the law and provide just punishment.

And, 21 U.S.C. §850 provides that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence under this subchapter or subchapter II of this chapter."

It is submitted that the Court should consider, in determining its sentence, the effect that a felony conviction and a long prison sentence will have on a person of this defendant's character and circumstances. The Defendant submits that mitigating factors exist in this case demonstrating that a within Guidelines sentence in this case is in direct conflict with the sentencing mandate under 18 U.S.C. §3553(a), which requires this Court to impose a sentence that is "sufficient, but not greater than necessary to achieve the goals of sentencing," as well as the accords of due process of law. Based on the above, the Defendant submits that he should be sentenced below the applicable Guideline range.

**This Court Should Consider the Advisory Guidelines along with All Relevant Factors under 18 U.S.C. §3553(a) and §3661 In Determining a Sentence That Is No Greater than Necessary to Achieve the Purposes of Sentencing.**

As this Court is well aware, in United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory guideline system created by the Sentencing Reform Act of 1984 (SRA) was unconstitutional. Therefore, the appropriate remedial measure was to declare the Guidelines merely advisory. See Booker, 125 S. Ct. at 757 (2005) (Breyer, J.). After Booker, federal sentencing is vastly different. Treating the Guidelines as advisory requires that the Court consider the guideline range calculation as merely one of many factors in determining a sentence no greater than necessary to achieve the goals of sentencing set forth in 18 U.S.C. §3553(a)(2).

F.  **The §3553(a) Sentencing Mandate**

Section 3553(a) is comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of §3553(a) and the "factors" to be considered in fulfilling that mandate. The overriding mandate of §3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in §3553(a)(2): (a) retribution; (b) deterrence; (c) incapacitation; and (d) rehabilitation.

United States v. Pullen, 89 F.3d 368 (7th Cir. 1996).

The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." The parsimony provision is not just another "factor" to be considered along with the others set forth in §3553(a). Instead, it sets an independent limit on the sentence a court may impose. See United States v. Siegel, 217 Fed. Appx. 115 (2d Cir. 2008). Since §3553(a) requires sentence to be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes is reversible, even if within Guideline range. Id.

In determining the sentence minimally sufficient to comply with the §3553(a)(2) purposes of sentencing, the court must consider several factors listed in §3553(a). These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence;
(4) the need to protect the public;
(5) the need to provide the defendant with needed educational or vocational training or medical care;
(6) the kinds of sentences available;
(7) the Sentencing Guidelines range;
(8) pertinent policy statements of the Sentencing Commission;
(9) the need to avoid unwanted sentencing disparities; and
(10) the need to provide restitution to victims.

United States v. Capanelli, 479 F.3d 163, 165 (2d Cir. 2007). While district courts must in all cases "consider" the Guideline range, United States v. Booker, 543 U.S. 220, 245-46 (2005), the Guidelines do not subordinate the other factors in §3553(a). Rather, it is the parsimony provision that serves as "the guidepost for sentencing decisions post-Booker." United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006).

Sentencing courts have a duty to consider many factors that the Guidelines specifically exclude from consideration – even factors prohibited by the formerly mandatory Guidelines – in determining the type of sentence that satisfies the sentencing mandate of §3553(a).  See, United States v. Winingear, 422 F.3d 1211, 1246 (11th Cir. 2005) (declining to address whether sentences within the Guidelines range were per se reasonable, holding that as long as the sentence complied with 18 U.S.C. §3553(a), the sentence was reasonable).

The sentencing judge, after considering §3553(a) and §3661 factors (including the Guidelines), has full discretion to sentence anywhere within the statutory range.  If the Booker Court thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed – its opinion would surely say so. Booker, 125 S. Ct. at 791 (Scalia, J., dissenting). Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so. The remedial majority clearly understood that giving any special weight to the Guideline range relative to the other factors would violate the Sixth Amendment.  "A sentence may be unreasonable if it is the product of a procedure that does not follow Booker's requirements, regardless of the actual sentence. After a district court has accurately calculated the Guideline range, it may impose a more severe or more lenient sentence as long as the final sentence is reasonable. United States v. Singletary, 458 F.3d 72 (2d Cir. 2006).

**G. Mitigating Factors to Be Considered in Determining a Reasonable Sentence Under 18 U.S.C. §3553(a)(2).**

As set forth above, after Booker, this Court is statutorily required to impose a sentence that is minimally sufficient to accomplish the purposes of sentencing, and the Guidelines are only one of five equally important factors to be considered in determining the minimally sufficient

sentence. In the instant case, a sentence at the statutory minimum is sufficient to satisfy the goals of (1) retribution, (2) deterrence, (3) incapacitation, and (4) rehabilitation. Imposition of sentence greater than necessary to meet those purposes is reversible, even if such a sentence falls within the Guideline range.

The defendant faces sentencing before Your Honor. Mr. Harris is 46 years old. The defendant faces a significant period of incarceration under the sentencing guidelines. However there is no mandatory minimum for the defendant's convictions. The defendant submits that a short period of incarceration in the Bureau of Prisons is appropriate in this case.

The defendant is 46 years old. He has significant untreated substance abuse and mental health issues that need to be addressed. No one knows this better than the defendant himself.

The defendant accepts responsibility for his conduct. The defendant deserves punishment under the laws of the United States. However the defendant has already been punished. The defendant has been incarcerated for over 2 years now, since June 10 of 2014. He has lost his freedom for a significant period of time, especially in light of the facts and circumstances of this case. The defendant cannot sufficiently address his chemical dependency and mental health issues while incarcerated. Nor can the defendant take care of his physical disabilities while incarcerated.

Mr. Harris has redeeming qualities. He is a loving and caring person, to his family. His family has supported him throughout this proceeding and will continue to do so. The defendant wishes to be able to spend time with his family again. The defendant is of limited financial means, as is his family. The chances of his family being able to regularly visit with him in a Bureau of Prisons setting is slim and none.

The defendant is not some big time drug dealer. Nor is he some violent gang-banger that is a danger to his community. The defendant's criminal history is significantly affecting his potential sentence before the court, and for that Mr. Harris understands he has only himself to blame. But the facts and circumstances of this case should not take away Mr. Harris's freedom anymore than the 2 years he has already spent in custody. The police came to the defendants' residence based on information that was unsubstantiated after a search of the residence. The defendant made statements to police while being under the impression he would be let go if he cooperated. The defendant admitted to being under the influence of illegal narcotics at the time of these statements.

Officers located a weapon and a small quantity of drugs inside the residence. But there is no allegation that the defendant was using the weapon located at his 49 Troup Street. Nor is there any allegation of any Officer witnessing the defendant ever touching the weapon in question. Nor was there any evidence of anyone from Law Enforcement seeing the defendant engaged in drug sales. Nor was there any allegation that the defendant was using the weapon as some sort of protection for his alleged drug sales. The drug amounts located combined to total .267 grams. In short, the defendant is no Tony Montana Your Honor. The defendant is a small time user who got caught up in something beyond his worst nightmare.

Defense Counsel submits that given the facts and circumstances of this case, a sentence of a small period of incarceration, outside the applicable guideline range, is more than sufficient to protect the public from further crimes of the defendant and afford adequate deterrence to criminal conduct by the defendant under 18 USC 3553(B) and (C).

**H.  No Fine Should Be Imposed, Based Upon The Defendant's Inability To Pay.**

The PSR suggests that the Defendant does not appear to have the ability to pay a fine within the guideline range. The defendant agrees with this recommendation.

Although the PSR recommends that the Defendant may be able to pay a modest fine, it is urged that Court no impose a fine.

The Sentencing Guidelines, under §5E1.2(d), states that the Court shall give consideration to "the burden that the fine places on the defendant and his dependents relative to alternative punishments."

Based upon Mr. Harris facing a significant period of incarceration, and his health problems limiting his ability to be employed when released, the defendant is unable to pay even a modest fine at this time and request the court waive any fine against the defendant.

## I.   Mr. Harris Requests That the Court recommends that he be Sentenced to a Facility as Near To Monroe County as Possible.

In consideration of the presence of his family in the area, it is requested that to that to the extent possible, that this Court recommend that Mr. Harris's prison sentence be served at a facility near Rochester New York.

## J.   Mr. Harris requests that the Court recommend that he be found eligible for any rehabilitation Program while in Federal Custody

Mr. Harris, as noted in this filing and through the Presentence Investigation Report, has an array of issues that need to be attended to. Mr. Harris would benefit from both substance abuse treatment and mental health treatment. To the extent its available, Counsel requests that the Court recommend that the defendant be deemed eligible for any and all rehabilitation programs while he completes his sentence with the Federal Bureau of Prisons. The defendant will still have the opportunity to lead a healthy, productive life upon his release from custody, and such programs will provide him help for his issues that have previously gone unaddressed and provide

further insight as to how his issues and decision making led him to his current situation.

K. **Consider Letters from Client's Family**

Letters on behalf of Mr. Harris are to be completed on his behalf shortly before sentencing. Counsel will forward any further letters regarding Mr. Harris prior to his sentencing date as requested by the Court. We would ask the Court to consider these when evaluating the 18 USC 3553 factors and an appropriate sentence.

L. **Conclusion**

The Court should factor Willie Harris's background, history, and life circumstances in its calculation of the appropriate sentence pursuant to U.S.C. § 3553(a). See *United States v. Cavera*, 550 F. 3 180 (2d Cir. 2008) (Policy considerations different than those reached by the Sentencing Commission are proper §3553(a) considerations for a sentencing court).

    Respectfully submitted,

    s/ Bryan S. Oathout
    Bryan S. Oathout, Esq.
    Attorney for the Defendant
    30 West Broad Street, Suite 400
    Rochester, New York 14614

◈PROB 1

| ACCEPTANCE OF RESPONSIBILITY |
|---|
| Defendant's statement regarding offense: |
| On June 10th, 2014 the FBI and Rochester police showed up at my home with a search warrant. The warrant covered any electronics that could be used in the charges they were claiming against me. In that search nothing was recovered related to those charges, but things I was holding for my nephew were found. Those were only in my home as a favor to my nephew. I appeared in court for the charges that I never committed and explained my situation. The court stated they could see why I was upset for being accused for something that I never did. I was only trying to help my nephew with a favor, but in the long run it has come back to hurt me. I wish I could turn back the closck to fix those days. I am very sorry all of this has happened and I just hope and pray that my sentencing will be fair and lenient for the sake of my kids and family. I just ask for one more chance to get out and show that I can change for my family. I would just like to be able to see my son grow up to be a man. Thank you for your time and consideration. |

n:\forms\psiforms\form1.wpd

11